BRIGHT, Circuit Judge,
concurring.
As an appellate court, we owe substantial deference to the sentencing decisions of the district court. Gall v. United States, 552 U.S. 38, 51-52, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). In addition, as the majority notes, our precedent has a difficult time imagining any scenario that could warrant reversal of a downward departure. United States v. Lazarski, 560 F.3d 731, 733 (8th Cir.2009) (stating “it is nearly inconceivable that the [district] court abused its discretion in not varying downward still further” from a presumptively reasonable guideline sentence). I concur in this case due to the institutional discretion owed the district court. However, I write separately to note the problems with the child pornography guidelines and to express my personal disagreement with the district court’s sentencing decision in this case.
Congress delegated significant discretion to the Sentencing Commission to initially formulate the guidelines. Mistretta v. United States, 488 U.S. 361, 367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Such delegation of authority was a great idea, as “[developing proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders is precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate.” Id. at 379, 109 S.Ct. 647. The Commission also provided “some insulation from the distorting pressures of politics” and was in position to monitor, study, and revise the guidelines over time. Frank O. Bowman, III, The Failure of the Federal Sentencing Guidelines: A Structural Analysis, 105 Colum. L.Rev. 1315, 1324 (2005).[2]
However, in several areas of the guidelines, including sex offenses, Congress has stepped away from its reliance on the Sentencing Commission and “used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy____” U.S. Sentencing Comm’n, Fifteen Years of Guidelines Sen- *431 fencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 72-73 (November 2004). “In the [Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT Act) of 2003], Congress, for the first time since the inception of the guidelines, directly amended the Guidelines Manual and developed unique limitations on downward departures from the guidelines in sex cases.” Id. While Congress’s direct involvement in the guidelines is not inherently problematic, it is suspect when it lacks significant policy discussion and analysis. See, e.g., United States v. Beiermann, 599 F.Supp.2d 1087, 1100 (N.D.Iowa 2009) (noting “the principal or only reason given by the Commission itself for each of the amendments [to the child pornography guidelines] is that the amendment was undertaken exclusively or primarily at the behest of Congress”); see also Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (Jan. 1, 2009).
District courts are also now free to categorically disagree with the guidelines, at least in areas where they “ ‘do not exemplify the Commission’s exercise of its characteristic institutional role.’ ” Spears v. United States, 555 U.S. 261, 264, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (per curiam) (quoting Kimbrough v. United States, 552 U.S. 85, 109, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)). An increasing number of district courts have exercised that discretion with respect to the child pornography guidelines. See, e.g., Beiermann, 599 F.Supp.2d at 1100 (N.D.Iowa 2009) (categorically rejecting U.S.S.G. § 2G2.2 on policy grounds and listing cases); United States v. Price, No. 09-CR-30107, 2012 WL 966971, at *11 (C.D.Ill. Mar. 21, 2012) (noting similar issues with U.S.S.G. § 2G2.1 and departing downward at sentencing).
In this area, the guidelines routinely place defendants near or over the statutory-maximum sentence, eliminating any meaningful distinction between the least and most culpable offenders. This case is a great example. The guidelines called for Zauner to be sentenced to thirty years in prison and would have recommended a life sentence if they had not been constrained by the statutory-maximum punishment. See 18 U.S.C. § 2251(e). Yet looking at Zauner’s offense conduct alone, she does not rank among the worst child pornography offenders deserving of the statutory-maximum sentence. She was a first-time offender and her conduct did not trigger several of the possible enhancements under U.S.S.G. § 2G2.1. There is also nothing in the record to indicate the pictures were distributed beyond those people directly involved in the offense conduct. On the facts of this case, I do not believe any reasonable judge would have sentenced Zauner to the recommended sentence under the guidelines. The district court apparently agreed, exercising its prerogative to depart downward to sentence Zauner to eighteen years in prison — three years above the mandatory minimum. And where the guidelines are out of line and increasingly disregarded by sentencing judges, the mere fact of a downward departure should not insulate the district court’s sentence from any type of meaningful review. In addition, in cases such as this, where the guidelines obviously do not fit, a sentencing judge should give careful assessment to the sentencing requirements of § 3553(a) and state the judge’s reasons and conclusions on the record.
I also write separately because I personally believe the sentence was excessive. As the Supreme Court has highlighted *432 several times: “ ‘It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.’ ” Pepper v. United States, — U.S.-, 131 S.Ct. 1229, 1239 — 40, 179 L.Ed.2d 196 (2011) (quoting Koon v. United States, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). And in a situation where the guidelines no longer provide any guidance, it is incumbent on the sentencing judge to provide a thorough discussion of the § 3553(a) factors and how they relate to the ultimate sentencing decision. Considering all of the facts of this case in light of the § 3553(a) factors, I do not believe any sentence over the mandatory minimum was warranted.
First, Zauner’s troubled history and diminished mental capacity were not given sufficient weight by the district court. Her background and psychological issues were well documented by Dr. Ernest Boswell, the psychologist who interviewed Zauner in preparation of sentencing. The psychologist found Zauner exhibited a pattern of “general passivity in dealing with the world around her” and “[f]rom an early age she has deferred decisions to others around her.” He also found “a history of significant family dysfunction, early onset of alcohol use, rape and impaired intellectual abilities.” Dr. Boswell also tested Zauner’s intellectual function and she scored in the fourth percentile of overall cognitive ability — “[sjtated differently, 96% of adults have superior intellectual functioning to Ms. Zauner.”
Zauner’s background is especially important in light of Dr. Boswell’s conclusions about Tafolla, who participated in the crime. While Dr. Boswell was not able to interview Tafolla, he had access to Tafolla’s and Zauner’s statements to law enforcement and other police reports from the investigation. Dr. Boswell found that “the psychological evidence suggests that Tafolla is a pathological individual who targeted, groomed and manipulated Ms. Zauner via a series of orchestrated statements and behaviors to engage in activities aimed at gratification of his aberrant and illegal sexual impulses” and that “Zauner was not the initiator or dominant individual in the sequence of events that resulted in the sexual exploitation of her daughters.”
Generally speaking, the leader of a criminal act should be punished more severely than the followers. See, e.g., U.S.S.G. § 3B1.1(a). In this ease, Tafolla preyed upon Zauner, requesting the pornographic pictures of her children, and manipulating her into believing her actions were acceptable. As the prime actor in this offense, and the one with the “aberrant and illegal sexual impulses,” I believe he should have received the stiffer sentence. Instead, his first victim, Zauner, got the heavier penalty. Tafolla was sentenced to 192 months (16 years) while Zauner received two years more. In cases where the guidelines realistically should not apply, as in this case, I suggest that the district court focus on the statutory requirements of § 3553(a) and particularly the admonition that district court “shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes” of the statute. See 18 U.S.C. § 3553(a). This is a heavy sentence for a first time offender who was led into the offense by an unscrupulous predator. Fifteen years — the mandatory minimum — was more than sufficient.

. Guidelines generally are a good idea, but according to many observers, the federal guidelines have not worked out well in practice. See, e.g., Frank O. Bowman, III, The Failure of the Federal Sentencing Guidelines: A Structural Analysis, 105 Colum. L.Rev. 1315 (2005).